IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| BABY D. GARRISON, | |
| Movant, | CIVIL ACTION NO.: 4:20-cv-36 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 4:18-cr-260) |
| Respondent. | |

## ORDER AND REPORT AND RECOMMENDATION

Movant Baby Garrison ("Garrison"), who is currently housed at the Coleman Low Federal Correctional Complex in Coleman, Florida, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Doc. 1. The Government filed a Motion to Dismiss, and Garrison filed a Motion for Judgment on the Pleadings. Docs. 4, 5. Garrison also filed a Motion for Judicial Notice Showing an Illegal Arrest Transpired. Doc. 2. For the reasons which follow, I **RECOMMEND** the Court **GRANT** the Government's Motion to Dismiss, **DENY** Garrison's § 2255 Motion and Motion for Judgment on the Pleadings, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Garrison *in forma pauperis* status on appeal and a Certificate of Appealability. I **GRANT** Garrison's Motion for Judicial Notice, to the extent the Court construes this "Motion" as a supplement to Garrison's § 2255 Motion. Doc. 2.

## BACKGROUND

Garrison was charged and indicted, along with 42 co-defendants, for conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine and a

mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2 (count 1). United States v. Garrison, 4:18-cr-260 (S.D. Ga.) ("Crim. Case"), Doc. 4. Garrison faced a sentence of not more than 20 years' imprisonment on this count. Crim. Case, Docs. 5, 1123. Garrison's appointed counsel, Robert Mock, filed several pre-trial motions on Garrison's behalf. Crim. Case, Docs. 222, 224–29. Garrison and Mr. Mock were able to negotiate a plea agreement with the Government whereby Garrison agreed to plead guilty to a lesser included offense of the conspiracy charge—conspiracy to possess with intent to distribute and to distribute a quantity of methamphetamine (count 1). Crim. Case, Doc. 551. In exchange, the Government agreed to not object to a recommendation Garrison receive a three-level reduction for acceptance of responsibility and move the Court to dismiss any remaining counts against Garrison. Id. at 3–4. The Honorable R. Stan Baker held a change of plea, or Rule 11, hearing.

At the outset of this hearing, Judge Baker informed Garrison the purpose of the hearing was to ensure the decision to plead guilty was a product of his free will and was free of any improper inducements, Garrison was aware of what he was doing, there was a factual basis for the finding of guilt on the charge to which he was pleading guilty, and he had sufficient information about his rights and choices. Crim. Case, Doc. 1310 at 5–6. During the plea hearing, Assistant United States Attorney ("AUSA") Greg Gilluly provided the factual basis for Garrison's plea by providing the Court with the evidence the Government would present if Garrison wished to proceed to trial. Id. at 24–26. Garrison stated he did not disagree with anything AUSA Gilluly presented and described his own actions to the Court. Id. at 26–27. Judge Baker accepted Garrison's guilty plea, adjudged him guilty of the lesser included offense, and directed the United States Probation Office to prepare a pre-sentence investigation report

2

("PSR"). Id. at 28–29. Judge Baker later sentenced Garrison to 145 months' imprisonment. Crim. Case, Docs. 1197, 1200. Garrison did not file a direct appeal.

Garrison has now filed a § 2255 Motion, as supplemented, to challenge his sentence. Docs. 1, 2. The Government filed a Motion to Dismiss, and Garrison filed a Motion for Judgment on the Pleadings. Docs. 4, 5. This matter is fully briefed and ripe for the Court's review.

## DISCUSSION

**I.    The Waiver Provision in the Plea Agreement Bars Garrison's Claims**

Garrison contends he received a two-level enhancement under the United States Sentencing Guidelines based on his Georgia arrest warrants, which the state court dismissed after he was sentenced in this Court. Doc. 1 at 4. Garrison asserts his sentence should be recalculated. Id. at 12. In his supplement, Garrison states this Court lacked jurisdiction because his arrest by state authorities was "negated." Doc. 2 at 2. The Government argues Garrison's claims are barred by the collateral attack waiver provision in his plea agreement and states the waiver was made knowingly and voluntarily. Doc. 4 at 5.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998). A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional defendant could not raise double jeopardy claim on collateral attack following guilty plea); see also Jordan v. United States, CV118-142, 2019 WL 4879136, at *8 (S.D. Ga. Aug. 5, 2019) (noting record verified movant's agreement to collateral attack

3

waiver of all claims other than ineffective assistance of counsel was knowing and voluntary and barred claims covered by that waiver); in turn citing Carstarphen v. United States, Civ. Action No. 07-0417, 2008 WL 4369010, at *2–3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct based on valid collateral attack waiver)).

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)).

In addition, a defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

Garrison and Mr. Mock were able to negotiate a plea agreement with the Government in which Garrison agreed to plead guilty to a lesser included offense of the conspiracy charge (count 1). Crim. Case, Doc. 551 at 1. In exchange, the Government agreed to not object to a

4

recommendation Garrison receive a three-level reduction for acceptance of responsibility and to move the Court to dismiss any remaining counts against Garrison.  Id. at 4.  The plea agreement set forth the statutory elements and factual basis of the offense to which Garrison was pleading guilty.  Id. at 1–2.  Garrison agreed he was guilty of the offense.  Id. at 2.  Additionally, Garrison agreed no one had promised him a particular sentence or range and the Court could impose a sentence up to the statutory maximum sentence but would look to the Sentencing Guidelines and sentencing factors of 18 U.S.C. § 3553(a).  Id. at 2–3.

This plea agreement also contained a collateral attack waiver provision, which states:

> Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion.  The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel.

Id. at 7–8.  Further, Garrison affirmed he had read and reviewed the agreement with Mr. Mock, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate.  Id. at 12.

Garrison appeared before Judge Baker for his Rule 11 proceeding.  Judge Baker informed Garrison the purpose of the hearing was to ensure the decision to plead guilty was a product of his free will and was free of any improper inducements, Garrison was aware of what he was doing, there was a factual basis for the finding of guilt on the charge to which he was pleading guilty, and he had sufficient information about his rights and choices.  Crim. Case, Doc. 1310 at 5–6.

After Garrison was sworn in, Judge Baker asked Garrison about his educational level and whether he could read, write, and understand the English language, to which Garrison responded he could.  Id. at 8.  Garrison stated he was not under the care of a doctor, though he was taking medications for his diabetes which did not affect his ability to make decisions.  Garrison had not

had any drugs or alcohol in over a year.  Id. at 9.  Judge Baker found Garrison competent to participate in the hearing and to make the decisions he needed to make.  Judge Baker informed Garrison he had the right to not plead guilty and to go to trial, be represented by counsel at that trial, have the presumption of innocence, to see, hear, and have the government's witnesses cross-examined, to remain silent, to choose to testify, and to subpoena witnesses on his behalf.  Id. at 10–11.  However, if Garrison chose to plead guilty and Judge Baker accepted that plea, Judge Baker advised Garrison he would be giving up all of these rights associated with a trial.  Id. at 11.  Garrison stated he and Mr. Mock met three times, during which Mr. Mock reviewed the discovery the Government provided and the rights and defenses Garrison had available to him, allowed Garrison to express his viewpoint, explained the procedures involved, and generally discussed the Sentencing Guidelines and federal sentencing scheme.  Id. at 12–13.

       Judge Baker then reviewed the essential elements of the crime to which Garrison was pleading guilty and what the Government would have to prove on the essential elements.  Id. at 13.  Judge Baker advised Garrison to convict him of the lesser included offense of count 1 of the indictment, the Government would have to prove beyond a reasonable doubt three essential elements: (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess a quantity of methamphetamine; (2) Garrison knew of the unlawful purpose of this plan and willfully joined it; and (3) the object of the unlawful plan was to possess with the intent to distribute and to distribute a quantity of methamphetamine.  Id. at 13–14.

       Judge Baker advised Garrison of the maximum sentence he could impose for the lesser included count was 20 years in prison.  Id. at 14.  Judge Baker explained to Garrison, in imposing a sentence upon him, he would have to take into consideration the advisory Sentencing Guidelines and the factors set forth by statute (18 U.S.C. § 3553).  Id. at 15.  Judge Baker also

stated he would consider certain factors, including the nature and circumstances of the offense, Garrison's criminal history, the promotion of respect for the law, deterrence, and protection of the public.  Id. at 15–16.  Garrison stated he understood.  Id. at 16.  Judge Baker explained to Garrison his sentence could not be known at the time of his Rule 11 hearing and any estimate his attorney, the AUSA, or a probation officer may have made was only an estimate and was not binding on the Court.  Id.  Garrison affirmed no one had made any promises or guarantees about what sentence he would receive and understood the Court would solely determine his sentence.  Id. at 17.  Garrison verified Mr. Mock had his permission to negotiate with the United States to reach a plea agreement.  Id. at 20.

Judge Baker asked AUSA Gilluly to summarize the provisions of the plea agreement. AUSA Gilluly stated the material provisions were:

> This defendant does agree to plead guilty to the lesser included offense of Count 1 of the indictment, conspiracy to possess with intent to distribute and to distribute a quantity of methamphetamine.  The defendant does agree to the forfeiture as outlined in the indictment.
>
> The government will not object to a full reduction for acceptance of responsibility if the United States Probation Office makes such a recommendation.
> . . . .
>
> The defendant does agree to waive his right to appeal his sentence, with limited exceptions that are outlined in the plea agreement.  He also waives his right to collaterally attack his conviction and sentence, with one exception outlined in the plea agreement . . . .

Id. at 2021.  Judge Baker asked Mr. Mock and Garrison, respectively, if AUSA Gilluly's summarization of the plea agreement was consistent with the plea agreement he negotiated on his client's behalf and with the agreement he signed; both men stated it was.  Id. at 21.  Garrison also stated Mr. Mock reviewed the complete agreement and he read the plea agreement before he signed it.  Id. at 22–23.  Garrison stated he understood the plea agreement and by signing and

initialing the agreement, he agreed to be bound by the terms and agreed the facts contained in the agreement were true and correct. Id. at 23. Judge Baker reminded Garrison the plea agreement contained a collateral attack waiver and he could only file a collateral attack or habeas petition if he met certain conditions contained in the plea agreement. Id. at 23–24. Specifically, Judge Baker advised Garrison he would not be able to contest the sentencing in the plea agreement, unless the sentence were above the statutory maximum or if Judge Baker sentenced Garrison above the advisory Guidelines range, as found by him. Id. at 24. Garrison affirmed he was willing to waive his rights and agree to the provisions in the plea agreement. Id.

The Government presented a factual basis for Garrison's plea agreement through AUSA Gilluly's summary to the Court of the evidence the Government expected to be presented at trial regarding the conspiracy of which Garrison was a member. Id. at 25–26. Garrison did not disagree with anything AUSA Gilluly said, and Judge Baker asked Garrison to state in his own words what the factual basis of the guilty plea was. Id. at 26–27. Judge Baker then asked Garrison whether there were any promises or representations made other than those contained in the plea agreement, whether anyone had threatened, pressured, forced, or intimidated him or someone close to him to plead guilty, or whether anyone leaned on, bribed, or promised him anything to plead guilty, and Garrison responded "no" to each question. Id. at 27. Judge Baker determined Garrison's decision to plead guilty was voluntary, knowing, intelligent, and not the result of any force, pressure, threats, or promises, other than the promises contained in the plea agreement. Id. at 29. Judge Baker accepted Garrison's plea, found there was a factual basis for his plea, and adjudged him guilty of the lesser included offense of count 1 of the indictment. Id. Judge Baker advised Garrison a probation officer would prepare a PSR, and the Court would

schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Mock. Id. at 29–30.

To be clear, Judge Baker informed Garrison at the outset of the initial Rule 11 hearing the purpose of the hearing was for him to understand the case pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Garrison wanted to do after consultation with his attorney. Id. at 4–6. Judge Baker told Garrison he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing or the Government could prosecute him for perjury. Id. at 6. Judge Baker discussed the specific rights Garrison was afforded if he chose to persist with a not guilty plea, and Judge Baker advised Garrison he would waive those rights if he pleaded guilty and Judge Baker accepted his plea. Id. at 9–12. Garrison stated he had spoken with Mr. Mock about the facts and law of his case, including the plea agreement, discovery, and the Sentencing Guidelines in general terms. Id. at 12–13. Garrison verified AUSA Gilluly's summary of the plea agreement was consistent with the plea he had signed. Id. at 21. Judge Baker asked Garrison whether he wanted to plead guilty because he was, in fact, guilty of a lesser included offense of count 1 of the indictment, and he answered in the affirmative. Garrison declared he understood the rights and privileges he was waiving by pleading guilty, including appeal and collateral attack waivers, and proceeded to do so. Judge Baker determined Garrison's guilty plea was knowing and voluntary. Id. at 29. AUSA Gilluly provided a factual basis for Garrison's plea, and Garrison did not dispute the Government's factual basis. Id. at 25–27. Judge Baker accepted Garrison's plea and adjudged him guilty of the lesser included offense of count 1 of the indictment. Id. at 29. In so doing, Judge Baker addressed the "three core principles" required during a Rule 11 hearing. Lambert, 777 F. App'x at 339.

Because Garrison's guilty plea was knowing and voluntary and Judge Baker ensured Garrison understood he was waiving his right to collaterally attack his conviction or sentence in any manner, other than on a claim of ineffective assistance of counsel, the collateral waiver provisions of Garrison's plea preclude review of his sentencing claim. The Eleventh Circuit has consistently enforced such waivers, and there is nothing before the Court indicating Garrison's waiver should not be enforced. See United States v. DiFalco, 837 F.3d 1207, 1220 (11th Cir. 2016); United States v. Robertson, 795 F. App'x 698, 701 (11th Cir. 2019). Thus, the Court should **DENY** Garrison's Motion.

## II.     Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Garrison leave to appeal *in forma pauperis*. Though Garrison has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001));

see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Garrison's Motion and the Government's Motion to Dismiss and Response thereto and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Garrison a Certificate of Appealability, Garrison is advised she

11

"may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** the Government's Motion to Dismiss, **DENY** Garrison's § 2255 Motion and Motion for Judgment on the Pleadings, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Garrison *in forma pauperis* status on appeal and a Certificate of Appealability. I **GRANT** Garrison's Motion for Judicial Notice, which the Court construes as a supplement to Garrison's § 2255 Motion. Doc. 2.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed

12

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

      **SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of March, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA